UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SALES RESOURCE, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALLIANCE FOODS, INC., and MORAN )<br>FOODS, INC., d/b/a Save-A-Lot, Ltd. )<br>)<br>Defendants. )<br>-------------------------------------------------------- )<br>HALL SALES AND MARKETING, INC. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALLIANCE FOODS, INC., and MORAN )<br>FOODS, INC., d/b/a Save-A-Lot, Ltd. )<br>)<br>Defendants. ) | Case No. 4:08cv0732 TCM<br><br><br><br><br><br>Case No. 4:09cv0666 TCM |

**MEMORANDUM AND ORDER**

Pending before the Court is a motion filed by defendant Alliance Foods, Inc. ("Alliance") to dismiss the second amended complaint of plaintiff, Sales Resource, Inc. ("SRI"), pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 125] After this motion was filed, the action initiated by SRI was consolidated with an action filed by Halls Sales and Marketing, Inc. ("Halls Sales") against the same two defendants named by SRI, Alliance and Moran Foods, Inc., doing business as Save-A-Lot, Ltd. ("Moran"). Before the two actions were consolidated, Alliance had also moved in the Halls case to dismiss the

complaint pursuant to Rule 12(b)(6). [Doc. 17 in 4:09cv0666] For ease of reference, the Court will first address Alliance's motion to dismiss SRI's second amended complaint. This twenty-eight page complaint has two substantive counts, the first titled "Tortious Interference with Contract, Business Relationships and Business Expectancies," and the second titled "Unfair Competition."

**Background**

SRI alleges in its second amended complaint that it is in "the business of representing manufacturers, food suppliers and food processors as an independent agent of such companies for the sale of their products to retail and wholesale companies." (SRI Compl.[1] ¶ 1.) The business includes contracts or agreements with forty-seven companies for the solicitation of sales to Moran. (Id. ¶ 6.) For these companies, pursuant to these contracts or agreements and as of September 2007, SRI solicited sales orders; promoted products; administered program cost changes; provided customer service functions, including the processing and transmission of orders; followed up on past due invoices; resolved deductions; recapped order adjustments; and obtained and supplied market information for principals about customers and competitors's actions and prices. (Id.) SRI also sought customers for its principals's products and represented each seller in negotiating with and selling to customers, including Moran doing business as Save-A-Lot. (Id.) Additionally, as of September 2007, SRI had a reasonable expectation that its relationship

---

[1]All references to SRI's complaint are to the second amended complaint.

with the forty-seven companies would continue as long as SRI performed the required duties. (Id. ¶ 7.) Each of the listed relationships was economically valuable to SRI. (Id. ¶ 8.) At all times relevant, Moran and Alliance both knew of the relationships SRI had with the listed principals/suppliers to Save-A-Lot. (Id. ¶ 9.)

In a subsection of Count I of its second amended complaint, titled "Conspiracy to Interfere with Contracts and Relationships," SRI alleges that Alliance is a loyal buyer's agent for Save-A-Lot and seeks supply sources for Save-A-Lot. (Id. ¶ 11.) Alliance holds itself out as a seller's agent in competition with SRI. (Id.) Prior to September 28, 2007, Alliance entered into an agreement with Save-A-Lot to embark on "a scheme to capture the commissions paid by suppliers of Save-A-Lot to such suppliers' independent seller's agent on all sales to Save-A-Lot." (Id. ¶ 12.) This scheme created a conspiracy to intentionally and tortiously interfere with SRI's contracts and relationships with principals that supplied products to Save-A-Lot. (Id.) As part of this scheme, Alliance agreed to pay Save-A-Lot a large percentage of the commissions it received from Save-A-Lot suppliers and agreed to hire workers to perform services that would allow Save-A-Lot to save employee expenses. (Id. ¶ 13.) In return, Save-A-Lot agreed to contact its suppliers that were represented by other brokers, e.g. SRI, and "use its buying power to induce, coerce, intimidate and pressure" suppliers to hire Alliance and terminate SRI or other independent brokers. (Id.) SRI further alleges that Alliance and Moran knew that the suppliers would be intimidated by this request because they needed to please Save-A-Lot in order to sell their products. (Id. ¶ 14.)

In a subsection titled "Wrongful Means: Coercion and Intimidation," SRI additionally alleges that, in furtherance of the conspiracy, Save-A-Lot's President and Chief Executive Officer sent a letter to all companies SRI represented at Save-A-Lot notifying them that they would be contacted by Alliance and encouraging them to consider retaining Alliance. (Id. ¶ 17.) Alliance did contact the suppliers, by letter and telephone, and requested a meeting at an upcoming trade show. (Id. ¶ 18.) Save-A-Lot insisted that the suppliers attend the meeting without their brokers and made them aware that retaining Alliance was a Save-A-Lot priority. (Id.) Save-A-Lot's buyers contacted the forty-seven companies earlier listed to pressure them to retain Alliance and discharge SRI, explicitly and implicitly threatening that their future with Save-A-Lot was in jeopardy if they did not retain Alliance. (Id. ¶¶ 19, 20.) Save-A-Lot then created a list of suppliers who would not retain Alliance, advised its buyers to find replacement suppliers, and refused to take delivery of products from suppliers until they had agreed to retain Alliance. (Id. ¶¶ 21, 22.) Also, various Save-A-Lot executives contacted and pressured suppliers and placed pressure upon them to move to Alliance and fire SRI. (Id. ¶¶ 24-30.) Thirteen additional acts of interference with SRI's business relationships are described in paragraph thirty-one, followed by three paragraphs of other allegations of behavior in furtherance of the complained-of scheme. (Id. ¶¶ 31-34.) SRI then concludes that the described behavior in the subsection has damaged it, will continue to do so, "is intentional, and is tortious . . . and constitutes wrongful means of interference because it employs intimidation and coercion." (Id. ¶ 35.)

In the next subsection, titled "Wrongful Means: Fraudulent Concealment and Breach of Fiduciary Duty," SRI alleges that, by the conduct earlier described, Alliance has breached a fiduciary duty owed to the suppliers/principals and has failed to disclose to those suppliers/principals its financial interests and conflicts of interests, thereby committing a fraud. (Id. ¶¶ 37-38.) In another subsection, titled "Wrongful Means: Intentional Inducement of Breach of Fiduciary Duty," SRI alleges that Save-A-Lot also fraudulently concealed its relationship with Alliance from suppliers/principals and knew, or should have known, that its scheme with Alliance would induce Alliance to breach its fiduciary duty to its suppliers/principals. (Id. ¶ 41.)

In the next subsection, titled "Wrongful Means: Violation of Antitrust Statute and Fraud," SRI alleges that the purpose of the described conspiracy "is to secure a disguised price discount from Save-A-Lot's suppliers in violation of the Robinson-Patman Act (15 U.S.C. § 13) which price discount is not given to Save-A-Lot's competitors." (Id. ¶ 43.) The payments of commissions to Alliance and the subsequent transfer of a large percentage of those commissions to Save-A-Lot is alleged to be an "illegal, secret discount." (Id.) Alliance's behavior and concealment of the true nature of its relationship with Save-A-Lot is a further violation of the Robinson-Patman Act, 15 U.S.C. § 13(c). (Id. ¶¶ 44-45.)

In its fourth substantive subsection, "Wrongful Means: Fraud and Misrepresentation of Existing Facts," SRI catalogs various alleged "affirmative misrepresentations of existing facts" to suppliers, outlines when those misrepresentations were made, and by whom or to whom they were made. (Id. ¶¶ 47-51.) SRI further alleges that relying on these

misrepresentations, suppliers ended their relationships with SRI and retained Alliance. (Id. ¶ 52.)

The next subsection is titled "Wrongful Means: Use of Unlawful Practices Under Mo.Rev.Stat. § 407.020." This subsection includes two paragraphs, the first incorporates the previous paragraphs and the second states that the complained-of scheme and its interference with SRI's contracts are not justified or privileged because they are unlawful practices as defined in § 407.020. (Id. ¶¶ 54-55.)

In the subsection "Wrongful Means: Violation of Decree and Other Statutes and Regulations," SRI alleges that Alliance's interference with SRI's relationships and contracts is wrongful and violates a cease and desist order entered in In the Matter of Alliance Assocs., Inc., 73 F.T.C. 950, 1968 WL 94611 (1968). (Id. ¶¶ 56-57.) And, Save-A-Lot knew of this order and conspired with Alliance in its violation. (Id. ¶ 57.)

In the next, and last subsection of Count I, "Wrongful Means: Violation of Public Policy," SRI alleges that the described business practices of Alliance and Save-A-Lot rely on the various wrongful means earlier set forth and as such are "against the public policy of the State of Missouri and are therefore tortious, unjustified, and constitute wrongful means of interference." (Id. ¶¶ 59-60.)

Unlike the fragmented structure of Count I, Count II includes only two claims. (Id. ¶ 62.) One claim is that the earlier described conduct is unfair competition. (Id.) The second is that the conduct is "immoral and unethical in the business community in that [it] involve[s] a form of extortion and corporate bribery." (Id.)

For the foregoing conduct, SRI seeks monetary and injunctive relief.

Alliance seeks to dismiss for failure to state a claim Count II and those portions of count I alleging violations of § 407.020, of fraud and misrepresentations it allegedly made to SRI's suppliers, of a breach of fiduciary duty it allegedly owed to those suppliers, and of the Federal Trade Commission's cease and desist order. SRI opposes the motion.[2]

## Discussion

Rule 12(b)(6) Standard. "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" **Benton v. Merrill Lynch & Co.**, 524 F.3d 866, 870 (8th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Id.** (citing Twombly, 550 U.S. at 556). The plausibility standard

---

[2]SRI attaches various exhibits in support of its response. It is well established that when considering a Rule 12(b)(6) motion the Court generally may not consider materials outside the pleadings. See **Noble Sys. Corp. v. Alorica Central, LLC**, 543 F.3d 978, 982 (8th Cir. 2008); **BJC Health Sys. v. Columbia Cas. Co.**, 348 F.3d 685, 687-88 (8th Cir. 2003); **Casazza v. Kiser**, 313 F.3d 414, 418 (8th Cir. 2002).

requires "more than a sheer possibility that a defendant has acted unlawfully." **Id.** "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" **Id.** (quoting Twombly, 550 U.S. at 557). This standard reflects "two working principles." **Id.** "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." **Id.** "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." **Id.** at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." **Id.**

Mo.Rev.Stat. § 407.020. In one subsection of Count I, SRI alleges that Alliance and Save-A-Lot's interference with SRI's contracts and relationships with suppliers/principals are neither justified nor privileged because the underlying acts are unlawful under the Missouri Merchandising Practices Act ("MMPA"), Mo.Rev.Stat. § 407.020.[3] Alliance moves to dismiss this claim, arguing that SRI's reliance on the MMPA is misplaced because no consumer transaction occurred. In response, SRI argues that it is not seeking damages under the MMPA.

---

[3]Section 407.020 provides, in relevant part:
The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

- 8 -

SRI and Alliance agree that the MMPA creates two methods of enforcement. Section § 407.025(1) provides for a private cause of action by consumers; § 407.100.1 allows the Missouri Attorney General to seek injunctive relief. SRI agrees that it is not a consumer and not the attorney general, nor is it making a claim under the MMPA. Rather, SRI included the MMPA allegations in anticipation of a defense by Alliance and Moran that their conduct was "justified" and "privileged" and as a means of showing that the conduct is "wrongful means" as defined by the MMPA.[4] Reference is made to the MMPA to demonstrate that such alleged conduct is defined as an unlawful practice under that statute.

In support of this argument, SRI cites **Carter v. St. John's Reg'l Med. Ctr.**, 88 S.W.3d 1, 14-15 (Mo. Ct. App. 2002), and **Fabricor, Inc. v. E.I. DuPont Demours & Co.**, 24 S.W.3d 82, 95 (Mo. Ct. App. 2000). In **Carter**, the court held that a breach by the defendant of a statutory duty would be a "wrongful act recognized by statute or by common law" as required to establish that the defendant employed improper means to further its own interests regardless of the fact that the plaintiff was not within the class of persons that the statute protected. 88 S.W.3d at 14-15. In **Fabricor**, the court held that "improper means are those that are independently wrongful such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or *any other wrongful act*

---

[4]When responding the pending motion to dismiss, SRI incorporated by reference its memorandum in response to an earlier motion to dismiss. Certain of its arguments addressed in this memorandum and order were made in SRI's earlier memorandum, including its MMPA argument.

- 9 -

*recognized by statute or the common law.*" 24 S.W.3d at 95 (emphasis added) (internal quotations omitted).

For the foregoing reasons, the Court will construe SRI's allegations of a violation of the MMPA to be in support of its claims of improper means and not a separate cause of action.[5] Thus, this is an evidentiary issue to be addressed at the appropriate time and not the basis for dismissal of the complaint.

<u>Standing to Assert Claims for Fraud and Misrepresentation to Suppliers.</u> Alliance also seeks dismissal of SRI's allegations of fraudulent misrepresentation on the grounds that SRI lacks standing to assert the claims of its suppliers/principals. Alliance notes that there is no allegation that Alliance made a fraudulent statement or misrepresentation on which SRI relied, and any misrepresentation that was allegedly made was to suppliers and not to SRI.

As was with regard to the MMPA allegations, SRI states that it is not seeking to state a cause of action for misrepresentation. Its request for injunctive relief to prevent Alliance from concealing material facts does not require that a stand-alone claim for fraud be pled. Consequently, it is irrelevant whether all the required fraud elements are pled or if SRI has standing to file such a fraud claim. Instead, as before, SRI argues that the fraud and misrepresentation allegations are intended to support the absence of justification, the fourth element of a tortious interference claim.

---

[5]The Court notes that SRI's style of pleading well might have been a factor in Alliance's interpretation of allegations as separate causes of action.

- 10 -

Under Missouri law, "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." **Rice v. Hodapp**, 919 S.W.2d 240, 245 (Mo. 1996) (en banc); accord **Crowe v. Horizon Homes, Inc.**, 116 S.W.3d 618, 624 (Mo. Ct. App. 2003); **Service Vending Co. v. Wal-Mart Stores, Inc.**, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002). "To prevail on this tort claim, a party must adduce substantial evidence supporting each and every element." **Id.**; accord **Carter**, 88 S.W.3d at 13.

In support of its argument, SRI cites **Downey v. United Weatherproofing, Inc.**, 253 S.W.2d 976 (Mo. 1953) (en banc). In that case, the defendant, a competitor of the plaintiffs, allegedly attempted to induce plaintiffs' customers to breach their contracts by offering to indemnify those customers against liability for the breach. **Id.** at 982. The court held that if such allegations were established by evidence and shown to be continuing, the conduct might be enjoined if the prayer for such relief was not too broadly worded. **Id.** The court further held that the plaintiffs' allegations of defamatory statements by defendants, e.g., statements that plaintiffs were unreliable, insolvent, and unable to furnish goods and services contracted for, to induce customers to breach their contracts did not convert the tortious interference claim into a defamation claim, and that these defamatory statements were not proffered as a basis for injunctive relief but "as a means by which defendant was attempting to accomplish another continuing wrong from which plaintiffs seek relief." **Id.** at 982-83.

Alliance's motion to dismiss the fraudulent misrepresentation allegations will be denied.

Lack of Standing to Assert Breach of Fiduciary Duty Claim. Alliance also argues that SRI lacks standing to assert a claim that Alliance breached a fiduciary duty owed to SRI's suppliers by not disclosing a financial interest that would influence its conduct and that it, Alliance, had no such fiduciary duty. In response, SRI argues that Alliance does have a fiduciary duty to the suppliers and cites supporting case law. SRI also argues, however, that it is not pursuing a stand-alone claim for breach of fiduciary duty.

It appears to the Court that SRI is again making allegations, i.e., the breach of a fiduciary duty, to demonstrate that Alliance's actions that are the subject of SRI's tortious interference claim (the title of Count I) are unjustified. Based on SRI's representations to that effect, the Court will consider this also to be an evidentiary issue to be raised and resolved at the appropriate time.

Violation of Cease and Desist Order. In May 1968, the Federal Trade Commission ("FTC") entered a consent order directing Alliance to cease and desist from "[r]eceiving or accepting, directly or indirectly, from a seller, anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof . . . so long as any relationship exists between said brokerage organization and the buyer organization . . . ." In the Matter of Alliance Assocs., Inc., 73 F.T.C. at 954. SRI alleges in Count I that the currently complained-of conduct violates this cease and desist order. Citing 16 C.F.R. § 3.72(b)(3)(i), providing for an implied termination date of cease and desist orders after

twenty years from the date on which the order was first issued, or on January 2, 1996, whichever is later, Alliance argues that the order at issue expired in 1996.

SRI counters that the "sunset" provision of § 3.72(b)(3) is subject to certain exceptions or stays, see § 3.72(b)(3)(ii)-(iii), but its attempts to discover relevant documents have been objected to by Alliance. SRI further argues that, until the requested discovery is produced, dismissal of these allegations is premature. Alliance answers that SRI lacks a good-faith basis to claim that an exception to the sunset provision exists.[6]

Again, the Court notes that Count I is a tortious interference claim that apparently is to be supported with allegations that Alliance has violated a cease and desist order from the FTC.

The Court will deny Alliance's motion to dismiss the cease and desist order allegations as premature and directs the parties to resolve this simple discovery issue. It should not be an impossible task for the parties to determine if any of the exceptions or stays under § 3.72(b)(3)(ii)-(iii) are applicable to the 1968 cease and desist order.

<u>Unfair Competition.</u>  SRI alleges in Count II that all of the statements and conduct earlier alleged are unfair competition against SRI. Alliance moves to dismiss this Count

---

[6]In its reply memorandum, Alliance advises the Court that Save-A-Lot's counsel notified SRI during the February 2009 deposition of Sal Stazzone that the 1968 order had expired, yet no related questions were asked of Mr. Stazzone by SRI's counsel, nor were any related questions asked of Alliance's corporate representative and chief executive officer. Although SRI allegedly did not expend the time and effort necessary to inquire of Alliance's witnesses on this issue, apparently Alliance has not voluntarily provided any relevant documentation or information. The Court does not find that SRI's omission during the two depositions precludes its argument that dismissal of the cease and desist order allegations is premature.

under both Federal and state law, arguing that there is no private right of action under the Federal Trade Commission Act ("the Act"), 15 U.S.C. § 45, because the FTC has exclusive enforcement power and that under Missouri law such cause of action exists only when there is a claim for misappropriation of the property of another party, an allegation not made by SRI. SRI replies that it is not asserting a cause of action under the Act but "is simply" stating "another ground for [its] claim that [Alliance's] tortious interference is not justified or privileged because it is violative of a statute."[7] (Resp. at 5.) SRI further argues that its allegations are of the type found in the RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995) to be unfair competition.

In support of its argument that Missouri has recognized a common law unfair competition claim only in the context of the misappropriation of property of another party, Alliance cites three Missouri cases discussing an unfair competition claim for such misappropriation: **Osborn Paper Co. v. Carrold Osborn Paper Co.**, 234 S.W.2d 614, 617-18 (Mo. 1950); **Mary Muffet, Inc. v. Smelansky**, 158 S.W.2d 168, 169-70 (Mo. Ct. App. 1942); **Ralston Purina Co. v. Checker Food Products, Co.**, 80 S.W.2d 717, 719 (Mo. Ct. App. 1935). These cases predate the RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995). More recently, Missouri courts may look to the Restatement when analyzing unfair competition claims. See **Hubbs Machine & Mfg Inc. v. Brunson Instrument Co.**, 4:09cv701 CAS, Doc. 14 at 5 (E.D. Mo. July 1, 2009) (denying motion

---

[7]Again, SRI might have foreclosed some of Alliance's arguments by a more artfully-pled complaint.

to dismiss) (citing Doe v. TCI Cablevision, 110 S.W.3d 363, 368 (Mo. 2003) (en banc)); accord **Adbar Co. v. PCAA Mo., LLC**, 4:06cv1689 JCH, Doc. 35 at 19 (E.D. Mo. Jan. 4, 2008) (denying motion for summary judgment).

Section 1 of the Restatement sets forth three categories of activity that are exceptions to the general principle that "[o]ne who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other . . . ." RESTATEMENT § 1. Those categories are: (1) deceptive marketing, (2) trademark infringement, and (3) "appropriation of intangible trade values including trade secrets and the right of publicity." Id. at § 1(a)(1)-(3). "However, these specific forms of unfair competition do not fully exhaust the scope of statutory or common law liability for unfair methods of competition, and Subsection (a) therefore includes a residual category encompassing other business practices determined to be unfair." Id. at cmt. g. "As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also constitute an unfair method of competition." Id. For example, "interference in the commercial relations of a competitor resulting from unlawful threats directed at customers of the competitor will . . . constitute unfair competition." Id. Also, " a court may conclude that a failure to disclose to prospective consumers particular information that is critical to an intelligent purchasing decision constitutes unfair competition." Id.

Neither party provides the Court with clear authority for their respective positions. Consequently, the Court will deny the motion to dismiss and leave it to a fact-finder "to

determine if [Alliance's] behavior violated society's notions of fair play and fundamental fairness." **Adbar Co.**, Doc. 35 at 20.

### **Halls Sales and Marketing, Inc. v. Moran Foods, Inc.**

When this action was consolidated with 4:08cv0732, a Rule 12(b)(6) motion to dismiss filed by Alliance was pending. The complaint filed by Halls Sales and Marketing, Inc. ("Halls") differs from that filed by SRI only in the number of suppliers listed, i.e., nine as compared to the forty-seven listed by SRI. Neither Alliance's motion nor Halls' response differs. Hence, for the reasons set forth above, Alliance's motion to dismiss in 4:09cv666 will also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Alliance Foods, Inc.'s motion to dismiss the second amended complaint of Sales Resource, Inc., is **DENIED**. [Doc. 125]

**IT IS FURTHER ORDERED** that Alliance Foods, Inc.'s motion to dismiss the complaint of Halls Sales and Marketing, Inc., in 4:09cv0666 TCM is also **DENIED**. [Doc. 17]

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  30th  day of July 2009.