UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SALES RESOURCE, INC., d/b/a/ RESOURCE ONE, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:08cv0732 TCM |
| ALLIANCE FOODS, INC. and MORAN FOODS, INC., d/b/a SAVE-A-LOT, LTD., | ) ) ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| HALLS SALES AND MARKETING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:09cv0666 TCM |
| ALLIANCE FOODS, INC., and MORAN FOODS, INC., d/b/a SAVE-A-LOT, LTD., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Plaintiffs' Joint Daubert Motion to Strike Expert

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

Testimony of Scott Stringer Related to Services Rendered (motion to strike) [Doc. 254].[2]

**Background**

Plaintiffs Sales Resource, Inc. d/b/a Resource One ("Resource One") and Halls Sales and Marketing, Inc. ("Halls Sales") are brokers representing food manufacturers, suppliers, and processors (collectively vendors)[3] in the sale of private label products[4] to Defendant Moran Foods, Inc. d/b/a/ Save-A-Lot, Ltd. ("Save-A-Lot"), which is a wholly owned subsidiary of Supervalu. Defendant Alliance Foods, Inc. ("Alliance") is a broker competing with Plaintiffs in the sale of vendors' private label products to Save-A-Lot. This case focuses on a business arrangement Defendants entered into at the end of September 2007. In part,

---

[2] Plaintiffs' motion appears to address only one Stringer report, dated February 1, 2010. (See Plaintiffs' references to Stringer's "report," rather than to Stringer's "reports," in Pls.' Mot. to Strike at 1-2 and throughout Pls.' Mem. Supp. Mot. to Strike [Doc. 255]), and Plaintiffs' provision of only the Stringer report regarding Resource One as an attachment to their memorandum supporting their motion to strike [see Doc. 255-27].) Stringer, however, prepared two reports dated February 1, 2010: one focusing on Plaintiff Resource One (Ex. 26 to Pls.' Mem. Supp. Pls.' Mot. Strike [Doc. 255-27]) and one focusing on Plaintiff Halls Sales (Ex. 1 to Save-A-Lot's Oppos. Halls Sales's Mot. Partial Summ. J. [Doc. 227-1]). The substance of the two Stringer reports is, in general, the same; the only differences in the reports have to do with which Plaintiff the report is addressing, i.e., discussions and references focus on Resource One in the report pertaining to that Plaintiff and on Halls Sales in the report pertaining to that Plaintiff. For convenience, the Court will cite to the reports in the singular and will refer to only one of these reports, the one focusing on Resource One.

[3] The parties use various terms to refer to the entities involved in the sale of products to companies, like Save-A-Lot, that sell those products either to members of the public or to related businesses. For convenience, the Court will refer to the sellers of the products as vendors; will refer to those purchasing the products from the vendors, like Save-A-Lot, as buyers; and will refer to the purchasers of Save-A-Lot's items as customers, which reference includes members of the general public who purchase items at a Save-A-Lot corporate store and licensees who purchase items from Save-A-Lot for resale to members of the general public through a Save-A-Lot licensed store.

[4] A product referred to as "private label," "exclusive brand," or "store brand" carries the label of the store selling the item, here Save-A-Lot's label, and does not carry the label of a national branded product such as Coca Cola, Pepsi, Tide, or Ivory products.

this relationship includes regular payments to Save-A-Lot by Alliance.

By their pending complaints,[5] Plaintiffs seek monetary and injunctive relief based on Defendants' allegedly tortious interference with Plaintiffs' business relationships and business expectancies, as well as unfair competition. Plaintiffs allege the September 2007 change in Defendants' business relationship adversely affected Plaintiffs' brokerage relationships with some of the vendors they represented, resulting in the termination of or change in those vendors' brokerage relationships with Plaintiffs. Specifically, after 2007, Plaintiff Resource One did not have the same broker relationship with ten vendors the Court will refer to collectively as Kroger[6] and was not the broker for a vendor the Court will refer to as Kahiki;[7] and Plaintiff Halls Sales no longer was the broker for four vendors the Court will refer to separately as Baumer Foods, Liberty Gold, Malt-O-Meal, and Vista Bakery/Lance. After terminating the brokerage relationships they had had with Plaintiffs through 2007, all of these vendors, except Kroger, hired Alliance to represent them in their sales of private label products to Save-A-Lot. In their answers, Defendants deny the allegations, in large part, and

---

[5] These lawsuits were originally filed in the Circuit Court of St. Louis County, Missouri, and were subsequently removed to this Court. The Court consolidated these cases, with the agreement of the parties, for purposes of pretrial proceedings, reserving for a later time the decision whether to consolidate the cases for trial. [Doc. 143.] Earlier, the Court denied Alliance's motions to dismiss the complaints [Doc. 149], Hall Sales's motion for partial summary judgment [Doc. 304], and Defendants' motions directed to Plaintiffs' expert witnesses [Doc. 305, Doc. 306].

[6] These ten vendors are: Centennial Farms Dairy, Delight Products, Heritage Farms Dairy, La Habra Bakery, Michigan Dairy, Riverside Dairy, Tamarack Farms Dairy, Tara Products, Vandervoort Dairy, and Winchester Farms Dairy.

[7] Stringer's report regarding Resource One does not address Resource One's representation of Kahiki.

set forth numerous affirmative defenses. Now before the Court is Plaintiffs' challenge to one of Defendants' expert witnesses, Scott Stringer.

Defendants hired Scott Stringer, in relevant part, to report on the expenses Save-A-Lot incurred in providing advertising, promotional, and merchandising services to Alliance's vendors. Stringer, who has a Bachelor of Science in Accountancy from Southern Illinois University at Edwardsville and a Masters in Business Administration-Finance from St. Louis University, is a certified public accountant, with additional certifications in financial forensics, as a fraud examiner, and as a valuation analyst. (Stringer Report, Ex. 26 attached to Pls.' Mem. Supp. Pls.' Mot. Strike, at 19-23 [Doc. 255-27]). He examined various records and concluded "that for the fiscal year 2009 through 2010 year-to-date, [Save-A-Lot] spent over [a large amount of money] for advertising and administrative expenses related to vendors represented by Alliance . . . and was reimbursed [less than that amount of money] by Alliance." (Id. at 2, 18.) Stringer also provided his opinion of the reports of Plaintiffs' expert, Robert Roe, except for Roe's report regarding Kahiki. (Id. at 3-18.)

## Discussion

Plaintiffs ask the Court to strike Stringer's testimony regarding liability issues under the Robinson-Patman Act, 15 U.S.C. § 13(c), more specifically, his testimony about "the nature, quantity, identity, value or amount of the services Save-A-Lot supposedly provided to Alliance . . . or to the vendors of Alliance."[8] There is no direct Robinson-Patman Act

---

[8] Plaintiffs acknowledge that Stringer will also testify to damages issues, but their motion to strike Stringer is only directed to his opinion regarding liability under the Robinson-Patman Act, 15

- 4 -

claim in this case. Rather, the Robinson-Patman Act issues arise in the context of Plaintiffs' tortious interference claim. Absence of justification is an element of Plaintiffs' tortious interference claim. See, e.g., **Stehno v. Sprint Spectrum, L.P.**, 186 S.W.3d 247, 250 (Mo. 2006) (en banc) (to make a submissible case on a tortious interference claim, a plaintiff must demonstrate "(1) a valid business expectancy [or contract]; (2) defendant's knowledge of the relationship [or contract]; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages"). For their tortious interference claim, Plaintiffs allege, in relevant part, that Defendants' violation of the Robinson-Patman Act establishes that Defendants' challenged conduct was not justified. In summary, if Defendants establish the payments paid by Alliance to Save-A-Lot were for services rendered by Save-A-Lot, then there is no Robinson-Patman Act issue in this case. Plaintiffs argue Stringer's testimony about "what the services were that Save-A-Lot was getting paid for and billing Alliance for over the past two years" is inadmissible because it fails to take into account what the real services were, its admission would allow Save-A-Lot to "sandbag" Plaintiffs on a key issue in the litigation, it is barred by Federal Rule of Civil Procedure 30(b)(6), it is not an appropriate subject for an expert, it is based on fatally flawed

---

U.S.C. § 13(c). Therefore, the Court understands there is no motion to strike Stringer's damages opinion.

In his report Stringer also opines that Plaintiffs' expert witness, Robert Roe, used methodologies, assumptions, and calculations, and came to conclusions, that "are fatally flawed and speculative and, thus, cannot be relied upon to any reasonable degree of certainty." Stringer Report of Scott A. Stringer at 2 and 17-18, Ex. 26 to Pls.' Mem. Supp. Pls.' Mot. to Strike (Doc. 255-27). Plaintiffs' motion to strike does not address this aspect of Stringer's report and testimony.

methodology that has no logical connection to the issues in the case, and it ignores the relevant time period.[9]

As indicated by the title of the motion, Plaintiffs' motion to strike presents issues under **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579 (1993), and its progeny. Before addressing the merits of Plaintiffs' motion, however, the Court will consider Defendants' argument that the motion is an untimely and invalid discovery motion, citing **Vondrak v. City of Las Cruces**, 671 F. Supp. 2d 1239, 1245-46 (D. N.M. 2009). Certain argument in support of Plaintiffs' motion to strike focuses on the course and scope of discovery, which concluded on March 15, 2010,[10] before Plaintiffs filed this motion. **Daubert** deals not with discovery matters but "with . . . Federal Rule of Evidence 702 and the admissibility of expert testimony." **Hickerson v. Pride Mobility Prods. Corp.**, 470 F.3d 1252, 1258 n.3 (8th Cir. 2006) (not addressing discovery issues). As the United States Court of Appeals for the Eighth Circuit stated, **Daubert** "speaks only to the manner in which federal courts determine whether experts are qualified and whether experts have employed sound, reliable, and accepted methodology to generate their opinions." **Id.** Under the circumstances, Plaintiffs'

---

[9] Plaintiffs also contend Stringer's testimony should be stricken on the grounds it is irrelevant under **Southgate Brokerage Co. v. F.T.C.**, 150 F.2d 607 (4th Cir. 1945) ("**Southgate**"). In a separate decision denying Plaintiff Halls Sales's motion for partial summary judgment (Doc. 304), this Court decided that **Southgate** is inapplicable to this case. Therefore, the Court will not further address that basis for striking Stringer's testimony; and denies Plaintiffs' motion to strike Stringer's testimony to the extent it is based on the **Southgate** decision.

[10] An order entered October 28, 2010 [Doc. 306], provides an exception to the earlier discovery deadline which is not pertinent to Plaintiffs' motion to strike.

motion to strike will be denied to the extent it presents discovery issues.

In considering the issues presented by Plaintiffs' motion to strike under **Daubert** and its progeny, the Court will not repeat the discussion of the law regarding **Daubert** and its progeny that was set forth in this Court's October 27, 2010, order, in this case, but will use that discussion to resolve issues here. (See discussion at page 12 et seq. in the Court's order denying Defendants' motions to exclude and to exclude or strike the opinions and reports of Plaintiffs' expert, dated October 27, 2010 [Doc. 305].)

In their motion, Plaintiffs argue Stringer's report and testimony about the services rendered by Save-A-Lot should be stricken because Stringer ignored testimony as to what Save-A-Lot's "real services" were. In support of this argument Plaintiffs point to testimony of Pat Ragusa (deceased), a former executive of Save-A-Lot, in a 2008 deposition. Specifically, Ragusa testified that Save-A-Lot rendered the "service" of putting pressure on the vendors to move from Plaintiffs to Alliance. (Ragusa Dep. 204-05; see also Ragusa Dep. 78, 80, 118-19, 121-22, 142-43, 149, 163-66, 175-76, 178-80, 201.) Therefore, Plaintiffs urge, Stringer's opinion that Save-A-Lot rendered administrative and advertising services in exchange for Alliance's payments should be stricken. Because this argument goes to the evidentiary basis of Stringer's opinion, the Court will not grant Plaintiffs' motion to strike on this basis. See **Children's Broad. Corp. v. Walt Disney Co.**, 357 F.3d 860, 865 (8th Cir. 2004) ("the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility") (internal quotation marks omitted ) (quoting Bonner v. ISP Techs., Inc., 259

F.3d 924, 929 (8th Cir. 2001)). Plaintiffs may pursue this challenge through cross-examination and the presentation of evidence at trial.

Plaintiffs also contend that Defendant Save-A-Lot "sandbagged" Plaintiffs regarding the "services rendered" issue because Stringer provided an opinion about the amount of expenses Save-A-Lot incurred for services rendered on behalf of Alliance's vendors' products based on his review of Save-A-Lot's books and records for fiscal years 2009 and 2010 (see Stringer Report at 5, 18, dated February 1, 2010), yet Save-A-Lot's corporate designee, Steve Harris, testified during his October 2009 deposition that, as Plaintiffs state it,

> no one at Save-A-Lot could testify from its books and records or in any other way as to what expenses Save-A-Lot incurred that it charged Alliance for in the first period of fiscal year 2010. [Harris] indicated Save-A-Lot did not keep records that would allow any such testimony for any month.

(Pls.' Mem. Supp. Pls.' Mot. Strike at 16; see, e.g., Harris Dep., Ex. 23 to Pls.' Memorandum Supp. Pls.' Mot. Strike, at 30-31, 88-89, 142-43 ). Again, this challenge to Stringer's opinion and report focuses on the evidentiary basis of that opinion and report, and is a matter of credibility rather than admissibility. **Children's Broad. Corp.**, 357 F.3d at 865. Plaintiffs may question the factual basis for this aspect of Stringer's opinion and report during the presentation of evidence and cross-examination at trial, but this is not a reason to exclude the opinion and report under **Daubert** at this time.[11]

---

[11] The Court understands that, during the discovery period, Plaintiffs did not depose another designee for Save-A-Lot, Bill Gillespie, which they knew about as of October 13, 2009 (see e-mail between counsel, dated October 13, 2009, attached as Exhibit 20 to Pls.' Mem. Supp. Pls.' Mot. Strike), and did not depose either Stringer or Defendants' other expert, William Bishop. While the parties may dispute the reasons for the absence of depositions of these individuals, the lack of these

Plaintiffs further urge that Stringer's testimony about the nature and value of services Save-A-Lot rendered to Alliance is not appropriate for expert testimony because this opinion is an effort to explain what is meant by statements on invoices sent by Save-A-Lot to Alliance; and is flawed because it is not based on a sufficient factual basis and is not directed to the proper time period. It appears that Stringer's challenged opinion will help the jury understand the invoices and other evidence regarding the relevant invoices Save-A-Lot sent to Alliance, the relevant payments made by Alliance to Save-A-Lot, and any services provided by Save-A-Lot for those payments.[12] While the Court is not excluding Stringer's opinion at this point, that opinion is not a substitute for factual information provided by Defendants regarding such invoices, payments, and services in support of their "services rendered" defense of any Robinson-Patman issues pursued at trial. See, e.g., **Concord Boat Corp. v. Brunswick Corp.**, 207 F.3d 1039, 1057 (8th Cir. 2000) (quoting Virgin Atl. Airways Ltd. v. British Airways PLC, 69 F. Supp. 2d 571, 580 (S.D.N.Y. 1999) as stating "an expert's opinion is not a substitute for a [party's] obligation to provide evidence of facts

---

depositions may indicate why Plaintiffs do not understand the information Stringer may have used to derive his opinion, and may explain at least to some extent that Defendants are not fully to blame for any "sandbagging" of Plaintiffs. Notably, Plaintiffs acknowledge they have now reviewed the documents pertaining to Stringer's report. (Pls.' Mem. Supp. Pls.' Mot. Strike at 20.)

To the extent Plaintiffs rely on **United States v. Taylor,** 166 F.R.D. 356 (United States Magistrate Judge's order), aff'd, 166 F.R.D. 367 (M.D. N.C. 1996) (United States District Judge's order), to support the exclusion of Stringer's report and opinion, the Court finds that case inapplicable because it addresses Federal Rule of Civil Procedure 30(b)(6) issues regarding discovery, rather than issues regarding admissibility under **Daubert** and its progeny.

[12] Plaintiffs do not challenge Stringer's qualifications, and the Court determines that he is qualified to address the matters he presents in his report.

that support the applicability of the expert's opinion to the case").  As noted earlier, Plaintiffs may pursue through cross-examination and the presentation of evidence at trial their challenges to the factual bases of Stringer's opinion.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike [Doc. 254] is **DENIED.**

/s/Thomas C. Mummert, III

THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of October, 2010.